UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| FOAM MASTER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:24-CV-389-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| PARATUS SUPPLY, INC., | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on the Motion to Dismiss filed by Defendant Paratus Supply, Inc. ("Paratus"). [R. 7]. Plaintiff Foam Master, LLC ("Foam Master") filed a response, [R. 8], and a Motion to Transfer Venue as Alternative to Dismissing Action ("Motion to Transfer"), [R. 9]. Paratus then filed a Combined Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction and Response to Plaintiff's Motion to Transfer. [R. 14]. Foam Master has replied. [R. 15]. Both motions are therefore ripe and ready for review. For the reasons set forth below, the Court will deny Paratus's Motion to Dismiss, [R. 7], and deny as moot Foam Master's Motion to Transfer. [R. 9].

## I. BACKGROUND

This action arises out of Foam Master's purchase of certain equipment from Paratus. *See* [R. 1-1, pp. 3–11 (State Court Complaint)]. More specifically, Foam Master, a limited liability company located in Winchester, Kentucky, purchased a trailer and spray foam rig equipment from Paratus's Barberton, Ohio dealership. *Id.* at p. 3–4, ¶¶ 2, 8.[1] In its briefing, Foam Master

---

[1] To the extent a page number on a document differs from the page number assigned by the Court's electronic docketing system, the Court references the page number assigned by the docketing system.

explains that it first became familiar with Paratus, an Ohio corporation with its principal place of business in Ohio, through a "Facebook spray foam insulation private group." [R. 8, p. 2]. Through that Facebook group, "contractors and suppliers active in the spray foam industry can subscribe and participate in networking and marketing." *Id.* Corey West, Foam Master's "owner and operator," joined the group in or around 2018 to "network with suppliers, other installers, and equipment dealers in the spray foam industry." [R. 8-1, ¶ 3]. At the time, West was working for another Kentucky-based spray foam company, Synergy Home HVAC, a Kentucky company which operates exclusively in Kentucky. *See id.* ¶ 7. While West was employed at Synergy Home HVAC, the company purchased a spray foam rig from Paratus. *Id.* After West joined the group (and presumably after he started Foam Master), Paratus's sales manager, Craig Cutcher, recommended that West purchase a spray foam rig from Paratus. *Id.* ¶¶ 4, 9, 10. At the time, West declined to purchase the equipment because his new business could not justify the expense. *Id.* ¶ 5. Over the years, however, Paratus's sales manager continued to market Paratus products to West. *Id.* ¶ 6. Eventually, West and Cutcher "engaged in significant conversations regarding [his] business operations." *Id.* ¶ 9. In these conversations, West disclosed that his company, Foam Master, operates exclusively in Kentucky. *Id.* Paratus's sales manager continued to solicit Foam Master's business, including communicating a sales offer to West's email (while West resided in Kentucky) and making several phone calls to West's Kentucky phone number. *Id.* ¶ 18. These "marketing efforts were successful, and on June 9, 2023, [West] purchased a custom-built" trailer and spray foam rig equipment from Partus's Baberton, Ohio dealership for a total of $78,641.50. *Id.* ¶ 21; *see also* [R. 1-1, p.  5]; [R. 7-1, pp. 14–16 (Exhibit 1C, Invoice), 17–19 (Exhibit 1D, Invoice)].[2] Per West, Paratus also sold its spray foam equipment to other Kentucky-

---

[2] Plaintiff alleges that he purchased the trailer and spray foam rig equipment for $78, 641.50. [R. 1-1, p. 5]. The invoices supplied by Paratus are for $15,000 and $62,513.00, which add up to $77,513.00. [R. 7-1, pp. 14–16

based companies, including his prior employer, Synergy Home HVAC, [R. 8-1, ¶ 7], and Thoroughbred Insulation, *id.* ¶ 8, and per Paratus's Facebook posts and reviews, it also sold to a number of Kentucky-based businesses, including B-Level Concrete Lifting. *Id.* ¶ 19.

Foam Master further alleges that Paratus made certain representations to West about the quality of the equipment and assurances about customer service options in the event of a malfunction. *See, e.g.*, [R. 1-1, pp. 4–5, ¶¶ 9–13]; [R. 8-1, ¶¶ 11–12]. Foam Master further alleges that, despite these representations, the equipment "has not functioned as promised" in the year leading up to this action. [R. 1-1, p. 5, ¶ 17]; *see also id.* at 5–6, ¶¶ 18–21. According to Foam Master, Paratus has failed to deliver on its promise of "prompt, responsive customer service," "the various components of the system do not work together," the equipment "is constantly malfunctioning," and it is not "suitable for its intended purpose," causing lost business opportunities for Foam Master. *Id.* at 6–7, ¶¶ 22–26.

On August 14, 2024, Foam Master filed suit against Paratus in Clark Circuit Court in Clark County, Kentucky. [R. 1-1, pp. 3–11 (State Court Complaint)]. Foam Master asserts claims for negligence (Count I), violations of the Kentucky Consumer Protection Act (Count II), violations of the Product Liability Act of Kentucky (Count IIII), tortious interference with business (Count IV), fraudulent/negligent misrepresentation (Count V), and breach of contract (Count VI). *Id.* Paratus was served on December 9, 2024 and timely removed the action to this Court on the basis of diversity jurisdiction. *See* [R. 1 (Notice of Removal)].

---

(Exhibit 1C, Invoice), 17–19 (Exhibit 1D, Invoice)]. Nevertheless, Paratus does not dispute the amount stated by Plaintiff.

Paratus then filed its Motion to Dismiss, seeking dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[3] [R. 7]. Foam Master filed a response, [R. 8], and its Motion to Transfer, [R. 9]. It argues that personal jurisdiction exists, or there is at least enough of a factual dispute to warrant jurisdictional discovery. *See, e.g.* [R. 8, p. 8]. Should the Court disagree, Foam Master asks that this action be transferred to the United States District Court for the Northern District of Ohio, rather than dismissed. *See* [R. 8]; [R. 9]. In its combined response to the Motion to Transfer and reply in support of the Motion to Dismiss, Paratus continues to ask for dismissal of the action. [R. 14]. However, it acknowledges that, if the Court is inclined to transfer the action, the United States District Court for the Northern District of Ohio is the appropriate venue. *Id.* at 1. Foam Master has filed its reply, and these motions are therefore ripe for review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows the Court to dismiss a suit for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). In deciding a motion to dismiss under this rule, the Court has three options: it "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)) (internal quotation marks omitted). The Court retains "considerable discretion" in selecting one of these three options. *Hardesty v. S.I.T., Inc.*, No. 5:17-cv-00108-TBR, 2017 WL 11483968, at *1 (W.D. Ky. Sept. 14, 2017) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

---

[3] The Court understands that Paratus makes a limited appearance for the purpose of contesting personal jurisdiction. *See generally Gerber v. Riordan*, 649 F.3d 514, 520 (6th Cir. 2011) (explaining that a party does not waive personal jurisdiction by making a special appearance "solely to contest personal jurisdiction's existence" (citations omitted)).

Regardless of which way the Court handles the motion, "the plaintiff always bears the burden of establishing that jurisdiction exists." *Serras*, 875 F.2d at 1214 (citations omitted).

When the Court rules on written submissions alone, "the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, 'by affidavit or otherwise [,] . . . specific facts showing that the court has jurisdiction.'" *Id.* (quoting *Well v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). Once the Court has determined that the personal jurisdiction issue can be resolved on such written submissions, it must consider the pleadings and affidavits in the light most favorable to the plaintiff. *Id.* (citations omitted). Under these circumstances, the plaintiff's burden is "merely that of making a prima facie showing that personal jurisdiction exists." *Id.* (citation omitted). To satisfy this burden, the plaintiff must "establish[] with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) (internal quotation marks omitted); *see also Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020).

However, if the parties' written submissions "raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing, and to order discovery of a scope broad enough to prepare the parties for that hearing." *Serras*, 875 F.2d at 1214 (citation omitted). If the Court does so, "the burden on the party asserting jurisdiction quite properly increases. [That party] must [then] establish that jurisdiction exists by the same standard that would obtain if the matter were deferred to trial: the preponderance of the evidence." *Id.* (citations omitted).

### III.  ANALYSIS

The Court first notes that, before addressing transfer, it must first determine whether it has personal jurisdiction over Paratus. This is because the law to be applied following a transfer depends on the nature of the transfer, and the nature of the transfer depends on whether this court "was one where venue was proper and where personal jurisdiction could be obtained." *Martin v. Stokes*, 623 F.2d 469, 475 (6th Cir. 1980). If, for example, this Court lacks personal jurisdiction (or venue is improper), transfer may be made under 28 U.S.C. § 1406(a), in which case "the state law of the transferee district court should be applied." *Martin*, 623 F.2d at 473, 474. On the other hand, if the Court has personal jurisdiction over the defendant and venue is proper, it may still transfer the matter under 28 U.S.C. § 1404(a), and the state law of the transferor court will apply to the transferred action. *Martin*, 623 F.2d at 473, 474. Accordingly, the Court must first consider whether personal jurisdiction exists.

### A.  Paratus's Motion to Dismiss, [R. 7]

A federal district court sitting in diversity must conduct a two-step inquiry to determine if it has personal jurisdiction over an out-of-state defendant: "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006) (citation omitted); *see also Aristech Chemical Intern. Ltd. V. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998). The Supreme Court of Kentucky has determined that the state's Long Arm Statute "does not reach the outer limits of the Due Process Clause." *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 505 (E.D. Ky. 2019) (citing *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011)). As a result, the Court must first determine whether

personal jurisdiction is proper under Kentucky's Long Arm Statute, and then conduct a federal

due process analysis. *Id.*

### 1. Kentucky's Long Arm Statute

Kentucky's Long Arm Statute allows personal jurisdiction over nonresident defendants in

certain enumerated situations, so long as the claim "arises from" the enumerated conduct. *See*

KRS § 454.210; *Caesars*, 336 S.W.3d at 58–59. Foam Master references three of those

enumerated categories: when that nonresident defendant[4] transacts business in the state, *see* KRS

§ 454.210(2)(a); contracts to supply services or goods in the state, *see id.* § 454.210(2)(b); or

causes tortious injury in the Commonwealth by acts and/or omissions outside the

Commonwealth (applicable only if the party "does or solicits business, or engages in any other

course of conduct, or derives substantial revenue from goods used or services rendered" in

Kentucky), *see id.* § 454.210(2)(d).

Before considering these subsections, however, the Court must clarify which version of

the Kentucky Long Arm Statute applies in this case. The statute was amended in 2024, with

those amendments becoming effective on July 15, 2024, shortly before this action was filed. *See*

*generally* KRS § 454.210; [R. 1-1]. Plaintiff cites the prior version of the statute. *See* [R. 8, p. 9];

KRS 454.210(2)(a)(4) (amended 2024). However, the amended version was in effect at the time

this action was filed on August 14, 2024. *See* [R. 1-1 (State Court Record)]. Accordingly, the

Court considers the amended version of the Kentucky Long Arm Statute when conducting its

personal jurisdiction analysis.[5]  *See Bell v. Kokosing Industrial, Inc.*, No. 23-5791, 2024 WL

---

[4] While the statute discusses a court's personal jurisdiction over a "person," it also makes clear that the term "person," as used in the statute, includes a "corporation . . . who is a nonresident of this Commonwealth." KRS § 454.210(1).

[5] Paratus likewise cites to the amended version of the statute. [R. 14, pp. 2–3]. And notably, the provision at the center of this Court's analysis (namely, the provision relating to contracting to supply services or goods in Kentucky, KRS § 454.210(2)(b)) was not amended in 2024.

3549581, *5 (6th Cir. July 26, 2024) (suggesting that the amended version was not retroactive); *Tew v. MCML Ltd.*, 751 F. Supp. 3d 733, 746–47 (E.D. Ky. 2024) (agreeing that the statute is not retroactive and applying the version in effect at the time of filing).

As to whether the Kentucky Long Arm Statute applies, Foam Master argues that Paratus's "knowing sale of equipment to [Foam Master]—a Kentucky company—with full knowledge that the equipment would be transported to and utilized in Kentucky, constitutes contracting goods in Kentucky." [R. 8, p. 9 (citations omitted)]. It further argues that Paratus "developed [Foam Master] as a customer intentionally through the direct marketing efforts of" Paratus's sales manager over the course of years; it sent an email quote to Foam Master in Kentucky; and it knew that the equipment would be utilized exclusively in Kentucky. *Id.* at 10. This conduct, Foam Master argues, constitutes "offer, acceptance, and consideration in the form of an exchange of payment and goods constitut[ing] the formation of a contract," with the subject of that contract (the trailer and equipment) being used in Kentucky. *Id.* Foam Master also includes an affidavit from West, discussing West's years-long communications with Paratus's sales manager, and the ultimate purchase of the spray foam equipment, as detailed above. *See* [R. 8-1 (West Affidavit)]; *supra* Section I.

Paratus, on the other hand, insists that "[t]he only connection between this dispute and Kentucky is that [Foam Master] is a Kentucky LLC located in Winchester, Kentucky and took the equipment to Kentucky after purchasing it in Ohio." [R. 7, p. 2]. It further insists that "every material aspect of the transaction was purposefully conducted in Ohio." *Id.* at 2, 3–4; *see also* [R. 7-1, ¶ 9 (Shockey Affidavit)]. It argues that it does not "transact business" in Kentucky, as its sole facility and entire workforce are in Ohio; it maintains no physical presence, offices, or employees in Kentucky; and its advertising does not "target" Kentucky and instead consists only

- 8 -

of a passive website and a Facebook page. [R. 7, p. 5]; *see also* [7-1, ¶¶ 3–4]. It similarly argues

that it did not "contract to supply goods or services" in Kentucky, as its contract documents were

prepared in Ohio, transmitted from Ohio, and signed in Ohio, and further, Foam Master traveled

to Ohio to pick up the purchased equipment, and it ultimately transferred payment to a bank in

Ohio. [R. 7, p. 5]. Lastly, Paratus argues that email and telephone communications are

insufficient to establish that it solicits business, engages in any other course of conduct, or

derives substantial revenue from goods used or consumed or serves rendered in Kentucky, as

required by KRS § 452.210(2)(d), the provision relating to tortious injury in Kentucky caused by

acts or omission outside the state. [R. 14, pp. 5–6].[6] In support of these arguments, Paratus

attaches an affidavit (with exhibits) of its president, Michael Shockey. [R. 7-1].

In considering these arguments, the Court notes that Foam Master has a "relatively light

burden" at this stage. *Gregory*, 2024 WL 2279165, at *4 (citation omitted); *see also Legacy

Hemp, LLC v. Terramax Holdings Corp.*, No. 21-5161, 2021 WL 4258822, *5 (6th Cir. Sept. 20,

2021) (describing the plaintiff's burden as "relatively slight" when there has been no evidentiary

hearing or jurisdictional discovery). Moreover, as already explained, the Court must view the

pleadings and affidavits in the light most favorable to Foam Master, and it cannot "weigh the

controverting assertions of the party seeking dismissal." *Gregory*, 2024 WL 2279165, at *4

(quoting *Theunissen*, 935 F.2d at 1459) (internal quotation marks omitted). With these principles

in mind, the Court considers whether Foam Master has satisfied its burden of demonstrating a

prima facie case of personal jurisdiction.

The Court first considers the provision of the Long Arm Statute that Foam Master most

heavily relies upon: "contracting to supply services or goods in this Commonwealth." KRS

---

[6] Paratus also argues that no tortious injury occurred by acts or omissions *in* Kentucky. [R. 7, p. 6]. However, Foam Master makes clear in its response that it does not rely on that provision of the Long Arm Statute. [R. 8, p. 9].

§ 454.210(2)(b). As noted above, Paratus argues that it did not contract to supply services or goods in the state because the contract documents were prepared in, transmitted from, and signed in Ohio; Foam Master traveled to Ohio to pick up the purchased equipment; and Foam Master ultimately transferred payment to a bank in Ohio. [R. 7, p. 5]. However, the Supreme Court of Kentucky has explained that "[a] plain reading of the statutory language produces the interpretation that the contract need not be made or executed 'in this Commonwealth,' but, rather, only that the contract provide for the supplying of services or goods to be transported into, consumed or used in Kentucky." *Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011); *see also Estate of Gibson v. Daimler North America Corp.*, 638 F. Supp. 3d 735, 745 (E.D. Ky. 2022) ("To satisfy the [contracting to supply services or goods in Kentucky] category, the contract need not have been executed in Kentucky." (citation omitted)). Thus, while a contract may be prepared and/or executed "beyond Kentucky's border," long arm jurisdiction may still be appropriate if "it was anticipated by the parties from the outset that the [goods] would be transported to and used in Kentucky." *Hinners*, 336 S.W.3d at 896; *see also Reid v. Tenant Tracker, Inc.*, 685 F. Supp. 3d 465, 474 (W.D. Ky. 2023) ("The crux of this statutory provision is not where the alleged contract was executed, but whether the contract provided for 'services or goods to be transported into, consumed or used in Kentucky.'" (quoting *H.E.B., LLC v. Jackson Walker, L.L.P.*, 587 S.W.3d 333, 342 (Ky. Ct. App. 2019)) (cleaned up)); *Estate of Gibson*, 638 F. Supp. 3d at 745 ("What matters is whether the contract provides for 'services or goods to be transported into, consumed or used in Kentucky." (quoting *H.E.B.*, 587 S.W.3d at 342)).

- 10 -

In the present case, the parties do not dispute that Foam Master entered into a contract with Paratus for the purchase of the trailer and spray foam equipment.[7] The question, then, is whether the contract provides for those goods to be transported into, consumed, or used in Kentucky. The pleadings and affidavits, when viewed in the light most favorable to Foam Master, answer this question in the affirmative. For instance, the affidavits demonstrate that Paratus's sales manager solicited Foam Master's business via the spray foam Facebook group; that Paratus, through its sales manager, knew that Foam Master operates exclusively in Kentucky (and therefore knew that the equipment would be used by Foam Master in Kentucky); and Paratus knew that the trailer and spray foam equipment would ultimately be transported to Kentucky. *See* [R. 8-1, ¶¶ 9–12].

Indeed, the affidavit and exhibits submitted by Paratus make this clear.[8] Attached to the affidavit of Paratus's president are quotes and invoices for the trailer and equipment, which Paratus purportedly prepared and emailed to Foam Master. *See* [R. 7-1, pp. 5–10 (Exhibit 1A, Quote), 14–16 (Exhibit 1C, Invoice), 17–19 (Exhibit 1D, Invoice)]. Each quote and invoice lists the address of the purchaser (or person to be billed), and the address to which the goods were to be shipped. *Id.* at 6, 15, 18. On the quote, both boxes list West, with a Winchester, Kentucky address. *Id.* at 6. On the invoices, both boxes list "Foam Master Insulations LLC" with a Winchester, Kentucky address. *Id.* at 15, 18. And moreover, Paratus does not deny that it knew

---

[7] In its reply brief, Paratus argues that "no contract to supply goods in Kentucky existed." [R. 14, p. 5]. When viewed in the context of Paratus's motion, other briefing, and the record evidence, the Court understands Paratus to argue only that the contract at issue was not to supply goods *in Kentucky*.

[8] While the Court cannot "weigh the controverting assertions of the party seeking dismissal," *Gregory*, 2024 WL 2279165, at *4, these assertions by Paratus do not conflict with the facts asserted by Foam Master, and Foam Master does not deny that these are the invoices that it received from Paratus in relation to the trailer and spray foam equipment. *See* [R. 7-1, pp. 14–16 (Exhibit 1C, Invoice), 17–19 (Exhibit 1D, Invoice)].

- 11 -

that Foam Master operates exclusively in Kentucky and that the purchased trailer and equipment would be used by Foam Master in Kentucky.

The Court therefore finds that the contract between Foam Master and Paratus provided for goods to be transported into and used in Kentucky. *See Olbers v. Thompson*, 3:16-cv-521-DJH, 2017 WL 3671328, *3 (W.D. Ky. Aug. 25, 2017) (finding that the defendant contracted to supply goods in Kentucky where a Kentucky resident entered into a contract to purchase a motorcycle seat from a Texas-based business, and it was anticipated by the parties that the motorcycle seat would be shipped to and used in Kentucky); *Advanced Solutions Life Sciences, LLC v. BioBots, Inc.*, 3:16-CV-00709-CRS, 2017 WL 2114969, *4 (W.D. Ky. May 15, 2017) (finding that the defendant contracted to supply goods in Kentucky where researcher contacted the company, was offered a quote, and accepted that offer by purchasing the product, which was for use in Kentucky); *Hinners*, 336 S.W.3d at 896 (finding that the defendant-seller contracted to supply goods in Kentucky where Kentucky resident submitted a winning bid for a vehicle located in Missouri and sold on eBay, the Kentucky resident traveled out-of-state to take possession of the vehicle, and the seller executed vehicle transfer documents so that the buyer could obtain his Kentucky registration and title for the vehicle, among other things).

Accordingly, the Court finds that Paratus's conduct falls within at least one of the nine enumerated categories in Kentucky's Long Arm Statute: contracting to supply services or goods in Kentucky. As a result, the Court need not consider whether personal jurisdiction is appropriate under the subsections relating to transacting business in Kentucky or causing tortious injury within the state due to acts or omissions outside the state. *See Advanced Sols.*, 2017 WL 2114969, at *4 (declining to consider other provisions of the Kentucky Long Arm Statute after

finding that the "contracting to supply services or goods" provision was satisfied); *Hinners*, 336 S.W.3d at 897 n.8 (same).

As already noted, in addition to falling within one of the Kentucky Long Arm Statute's enumerated categories, the claim must also "arise from" that conduct. *See, e.g.*, *Caesars*, 336 S.W.3d at 58–59. A claim "arises from" the conduct at issue when there is a "reasonable and direct nexus" between the statutory predicate for long arm jurisdiction and the alleged wrongful acts. *Id.* at 59; *see also Gregory v. EzriCare, LLC*, No. 23-69-DLB-CJS, 2024 WL 2279165, *3 (E.D. Ky., May 20, 2024) ("A claim 'arises from' certain conduct when there is a 'reasonable and direct nexus' between the conduct causing injury and the defendant's activities in the state." (quoting *Holbrook v. Mazda Motor Corp.*, 6:17-cv-244-DCR, 2018 WL 1571905, *2 (E.D. Ky. Mar. 30, 2018))). In many cases, the connection between the wrongful conduct and the statutory predicate will be "self-evident, especially when the claim is based upon tortious injury that occurs in this state or upon contracts to supply goods in this state." *Caesars*, 336 S.W.3d at 59. However, the "arising from" analysis must be "undertaken on a case by case basis." *Id.* And when determining whether a claim arises from the defendant's actions, courts "ultimately have to depend upon a common sense analysis, giving the benefit of the doubt in favor of jurisdiction." *Gregory*, 2024 WL 2279165, at *3 (quoting *Caesars*, 336 S.W.3d at 59) (internal quotation marks omitted).

On this point, Paratus argues that, even assuming its conduct falls within one of the enumerated categories in the Long Arm Statute, Foam Master's claims do not arise from any Kentucky-directed activities. [R. 7, p. 6]. Instead, it argues, the claims stem entirely from conduct that occurred in Ohio. *Id.* And although Foam Master eventually transported the spray foam equipment to Kentucky, this alone cannot satisfy the "arising from" requirement, according

to Paratus. *Id.* But the cases cited by Paratus are unconvincing. For example, in *Envirometric Process Controls, Inc. v. Adman Elec., Inc.*, 3:12CV62-S, 2012 WL 4023789 (W.D. Ky. Sept. 12, 2012), the Court found that phone calls and emails (concerning a contract to be performed in Tennessee) that purportedly constituted a transaction of business in Kentucky had no reasonable and direct nexus to the defendant's alleged failure to properly staff the Tennessee project, perform adequate work there, or properly bill for its services and materials. *Id.* at *4. In addition to the obvious factual difference, that case did not involve a contract for goods to be transported to and used in Kentucky, with claims arising from the alleged breach of that contract and the failure to provide adequate goods. Moreover, when citing to *Envirometric*, Paratus cites to the Court's federal due process analysis and specifically its discussion of reasonableness, not its "arising from" analysis under the Kentucky Long Arm Statute. [R. 7, p. 5].

The other cases cited by Paratus in support of its "arising from" analysis are equally unavailing. *See Blessing v. Chandrasekhar*, 988 F.3d 889, 901–02 (distinguishing between tortious activity within the state and merely causing a consequence in Kentucky through out-of-state actions, in the context of the long arm provision for causing tortious injury *through acts or omissions in Kentucky*); *Spectrum Scan, LLC v. AGM CA*, No. 3:07CV-72-H, 2007 WL 2258860, *2–3 (W.D. Ky. Aug. 2, 2007) (conducting a due process analysis and not discussing the "arising from" requirement); *Tube Turns Div. of Chemetron Corp. v. Patterson Co., Inc.*, 562 S.W.2d 99, 100 (Ky. Ct. App. 1978) (same).

Put simply, Paratus overlooks the nature of its contacts with the forum state—i.e., contracting to supply goods in Kentucky—and the nature of Foam Master's claims. Foam Master has asserted claims for negligence, violations of the Kentucky Consumer Protection Act, violations of the Product Liability Act of Kentucky, tortious interference with business,

- 14 -

fraudulent/negligent misrepresentation, and breach of contract. *See* [R. 1-1, pp. 3–11 (State Court Complaint)]. Each of these claims arises from Paratus's sale of the Kentucky-bound trailer and equipment to Foam Master, including Paratus's pre-sale representations and assurances about the quality, assembly, and sizing of the equipment, its suitability for Foam Master's business activities, and the availability of "swift customer service" in the event of a malfunction. *See* [R. 1-1, p. 4, ¶¶ 8–12]. Foam Master alleges in its complaint that it purchased the trailer and equipment from Paratus "in reliance on these representations," as well as Paratus's advertising on its website. *Id.* at pp. 4–5, ¶ 13. Each of Foam Master's claims are based on Paratus's failure to deliver on these representations and the consequences of that failure. *See id.* at p. 7, ¶ 27–32 (negligence claim based on breach of duty to properly assemble the spray foam equipment, resulting in lost business revenues and replacement costs); *id.* at p. 8, ¶¶ 33–38 (Kentucky Consumer Protection Act claim based on misrepresentations about the nature, functionality, and fitness of the equipment); *id.* at pp.8–9, ¶¶ 39–42 (Product Liability Act claim based Paratus's construction, manufacturing, and marketing of the spray foam rig, and the rig's malfunctioning); *id.* at p. 9, ¶¶ 43–47 (tortious interference with business claim based on Paratus's intentional interference with Foam Master's valid business relationships with an improper motive, presumably by making false representations about the equipment); *id.* at pp. 9–10, ¶¶ 48–51 (fraudulent/negligent misrepresentations based on the pre-sale representations about the suitability and functionality of the equipment, which were allegedly made for the purpose of inducing a sale); *id.* at p. 10, ¶¶ 52–57 (breach of contract claim based on Paratus's failure to satisfy its obligations under the contract at issue).

Numerous cases support a finding that Foam Master's claims arise from Paratus's contract to supply goods in Kentucky and fall squarely into the provisions of KRS

§ 454.210(2)(b). For example, in *Hinners v. Robey*, the defendant placed an advertisement on eBay for a motor vehicle located in Missouri, and the plaintiff's bid was accepted as the winning offer. 336 S.W.3d at 893. The plaintiff traveled from Kentucky to Missouri to complete the transaction, execute the necessary transfer documents, and take possession of the vehicle. *Id.* at 893–94. Once the plaintiff returned to Kentucky, the vehicle began to malfunction, and the plaintiff ultimately sued the out-of-state defendant in Kentucky state court, alleging fraudulent misrepresentation and breach of warranty. *Id.* at 894. The Supreme Court of Kentucky found that long arm jurisdiction was satisfied, and specifically found that it was "self-evident from the complaint itself that the claims of misrepresentation 'arise from' [the] contract to supply goods in Kentucky." *Id.* at 896–97.

Similarly, in *Olbers v. Thompson*, the district court emphasized that, in Kentucky, "arising from" means "that the claims 'originate[d] from the actions or activities' of the defendant." 2017 WL 3671328, at *4 (quoting *Caesars*, 336 S.W.3d at 58). Thus, "there must be a 'reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction.'" *Id.* (quoting *Caesars*, 336 S.W.3d at 59). The court found that such a "reasonable and direct nexus" existed where a Kentucky resident entered into a contract with the out-of-state defendant for the sale of goods, namely, a motorcycle seat, which the plaintiff later alleged was defective and caused her injury. *Id.* The Court noted that the plaintiff "allege[d] that her injuries were caused by a defective product sold to a Kentucky resident by the defendants for use in Kentucky." *Id.*

Simply put, it is self-evident from the complaint that these claims "arise from" Paratus's contract to supply goods in Kentucky. *See Legacy Hemp*, 2021 WL 4258822, at *4 (explaining that, under Kentucky law, "a claim for breach of a contract to supply goods to Kentucky 'self-

- 16 -

evidently' arises from the contract, and the plaintiff's breach of contract claim "arose from" the defendant's refusal to supply the contracted-for goods); *Outdoor Venture Corp. v. Ronald Mark Assocs., Inc.*, No. CIV.A. 13-11-DLB, 2013 WL 2147854, *4 (E.D. Ky. May 15, 2013) (finding that claims for breach of warranty, fraudulent misrepresentation, and negligent misrepresentation were directly related to the defendant's failure to perform under the contract that gave rise to long-arm jurisdiction); *see also Industrial Servs. of America, Inc. v. Abcom Trading Pte. Ltd.*, 869 F. Supp. 2d 807, 810 (W.D. Ky. 2012) (finding, in the context of its due process analysis, that the plaintiff's claims of misrepresentation and/or breach of contract arose from the defendant's contracting to deliver goods in Kentucky, where the claims involved those same contracts); *Tri-State Equipment*, 2007 WL 2571672, at *4 (finding, in the context of its due process analysis, that "the fact that [the defendant] entered into a contract with a Kentucky corporation and the instant action is based upon a breach thereof is sufficient to satisfy" the "arising from" prong).

This distinguishes the present case from those in which there was no "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." *Caesars*, 336 S.W.3d at 59. For example, in *Caesars Riverboat Casino, LLC v. Beach*, the Supreme Court of Kentucky held that the negligent acts or omissions that resulted in the plaintiff's slip-and-fall accident in an Indiana casino did not "arise from" the casino-defendant's transaction of business in Kentucky, which consisted of advertising and promotional campaigns and sponsoring civic events. *Id.* at 59; *see also Cox v. Koninklijke Philips, N.V.*, 647 F. App'x 625, 628–29 (6th Cir. 2016) (explaining that allegations of personal injuries resulting from chemical exposure had no relation to the defendant's signing of a corporate guarantee in Kentucky); *Hinners*, 336 S.W.3d at 896 (discussing *Caesars* and noting

- 17 -

that "[t]he connection between the tort claim based upon a theory of premises liability and the casino's business activity in Kentucky was far too attenuated").

In sum, the Court finds that Foam Master has satisfied its burden of demonstrating that Paratus's conduct falls within one of the Kentucky Long Arm Statute's enumerated categories, namely, for contracting to supply goods in Kentucky, and Foam Master's claims arise from this conduct. Accordingly, long-arm jurisdiction is appropriate.

## 2.  The Federal Due Process Clause

The Court next turns to the federal Due Process Clause, which "permits the exercise of both general and specific jurisdiction." *Aristech*, 138 F.3d at 627. General jurisdiction exists if the defendant "has 'continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims.'" *Id.* (quoting *Kerry Steel v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)). In other words, if the defendant's contacts with the forum state are of a "continuous and systematic nature," then "the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (quoting *Third Natl. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)) (internal quotation marks omitted). In the present case, however, Foam Master does not argue that general jurisdiction exists and instead focuses on specific jurisdiction. *See* [R. 8, p. 10–13].

Unlike general jurisdiction, specific jurisdiction allows a defendant to be sued in the forum state only with respect to "claims that 'arise out of or relate to' a defendant's contacts with the forum." *Aristech Chemical*, 138 F.3d at 627–28 (quoting *Kerry Steel*, 106 F.3d at 149) (internal quotation marks omitted). The Sixth Circuit applies a three-part test to determine if a

defendant's contacts with the forum satisfy due process. *See, e.g.*, *Aristech Chemical*, 138 F.3d at 628; *Lexmark Intern., Inc.*, 304 F.Supp.2d at 915.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Lexmark Intern., Inc.*, 304 F.Supp.2d at 915 (quoting *Southern Machinery Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)); *see also AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, *3 (6th Cir. May 8, 2024) (discussing this three-part test). All three prongs must be satisfied. *Spectrum Scan, LLC v. AGM* CA, 3:07CV-72-H, 2007 WL 2258860, *2 (W.D. Ky. Aug. 2, 2007). However, when the first two are satisfied, "an inference of reasonableness arises." *Theunissen*, 935 F.2d at 1461 (citation omitted).

### a.  Prong 1 – Purposeful Availment

The Court turns to the first prong of the test—that the defendant purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the forum state. The Sixth Circuit has explained that this requirement is the "sine qua non for in personam jurisdiction," and is therefore "arguably the most important factor." *Gregory*, 2024 WL 2279165, at *5 (quoting *Air Prods. & Controls, Inc. v. Safetech, Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007)) (internal quotation marks omitted). It is satisfied "when a defendant creates a 'substantial connection' with the forum state such that he 'should reasonably anticipate being haled into court there.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)). This prevents a defendant "from being haled into a jurisdiction by virtue of 'random,' 'fortuitous,' or 'attenuated' contacts." *Intera Corp. v. Henderson*, 528 F.3d 605, 616 (6th Cir. 2005) (quoting *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)); *see also Burger King*, 471 U.S.

at 476. Thus, "[t]he emphasis in the purposeful availment inquiry is whether the defendant has engaged in 'some overt actions connecting the defendant with the forum state." *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (quoting *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998)) (internal quotation marks omitted).

Paratus argues that this prong is not met because the transaction at issue was a single, isolated event, was initiated by Foam Master, and occurred entirely in Ohio; the initial quote sent to Foam Master allegedly included Paratus's standard Ohio forum selection clause; Foam Master traveled to Ohio to purchase the equipment, which was delivered to Foam Master in Ohio; Paratus offered training to Foam Master at its Ohio facility; Foam Master transmitted payment to Paratus's bank in Ohio; and "any service or warranty work with respect to the equipment" was to be performed at Paratus's Ohio facility.  [R. 7, pp. 9–10]; *see also* [R. 14, pp. 7–10]; [R. 7-1 (Shockey Affidavit)]. And as explained in its president's affidavit, Paratus's employees all work and live in Ohio; Paratus has no physical presence, office, employees, or operations in Kentucky; its advertisements do not specifically target Kentucky customers or maintain Kentucky-specific pricing or products. [R. 7-1, ¶¶ 3–4].

Foam Master, on the other hand, argues that Paratus purposefully availed itself of the forum state because its agent, Craig Cutcher, actively solicited and developed a relationship with Foam Master over several years by initiating contact with West through its online marketing efforts, with knowledge that Foam Master operated exclusively in Kentucky; Paratus communicated sales offers to Foam Master in Kentucky, via email, and also made several phone calls to Foam Master's Kentucky phone number; Paratus knew that the products sold to Foam Master would be used exclusively in Kentucky; and based on West's personal knowledge and as

evidenced on Paratus's Facebook page, Paratus has also sold its products to other Kentucky-based companies. [R. 8, pp. 4, 12].

Before considering these competing arguments, the Court first notes that a signed copy of the parties' purchase agreement has not been provided. In its reply brief, Paratus acknowledges that a signed copy of that purchase agreement has not been located. [R. 14, p. 13]. And Foam Master denies that it signed the offer that contained the venue and choice of law terms. [R. 8, pp. 3–4]. Foam Master also denies that it ever received a purchase agreement containing any such terms. *Id.* at 4. As already explained, the Court cannot weigh the controverting assertions of Paratus on this disputed issue. *Gregory*, 2024 WL 2279165, at *4.

Turning to the parties' arguments on purposeful availment, the Court notes that "physical presence [in the forum state] is not a requirement for purposeful availment." *Childress Cattle, LLC v. Cain*, 3:17-cv-00388-JHM, 2017 WL 3446182, *5 (W.D. Ky. Aug. 10, 2017) (citation omitted); *see also Air Prod. & Controls*, 503 F.3d at 551 (citation omitted). And even a single contact with the forum state can satisfy this first prong. Indeed, the Sixth Circuit has explained that "[i]t is the quality of the contacts, not the quantity, that determines whether they constitute 'purposeful availment.'" *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) (citation omitted). For example, where the defendant initiated calls, emails, faxes, and mail correspondence to the plaintiff for the purposes of discussing and placing orders for goods and continuing the parties' business relationship, the Sixth Circuit has found this first prong to be satisfied. *Air Prod. & Controls*, 503 F.3d at 551–52.

Moreover, while "entering into a contract with an out-of-state party alone does not automatically establish sufficient minimum contacts, the presence of certain factors in addition to the contract will be found to constitute purposeful availment." *Childress Cattle*, 2017 WL

- 21 -

3446182, at *5 (quoting *Air Prod. & Controls*, 503 F.3d at 551) (internal quotation marks omitted). Those factors include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* (quoting *Burger King*, 471 U.S. at 479) (internal quotation marks omitted); *see also Spectrum Scan*, 2007 WL 2258860, at *2. Indeed, "[t]he Sixth Circuit has repeatedly focused on where the negotiation and performance of a contract occurred." *Spectrum Scan*, 2007 WL 2258860, at *2 (citing *Calphalon*, 228 F.3d at 722).

For example, in *Spectrum Scan*, the district court found that several factors weighed against a finding of purposeful availment. *Id.* at *2–3. In that case, the plaintiff, rather than the defendant, initiated the contact between the parties; three in-person meetings to negotiate the contract took place outside Kentucky, and the remaining contacts occurred via phone, email, or fax; the execution of the contract did not involve any of the defendant's representatives traveling to Kentucky; the subject matter of the contract was located in California; and while there was a Kentucky choice-of-law provision in the contract, there was no personal jurisdiction waiver. *Id.* at *2. The Court also noted that, while the plaintiff performed many of the activities contemplated under the contract in Kentucky, "the key inquiry in personal jurisdiction cases concerns the activities of the *defendant*, not the plaintiff." *Id.* at *3. The Court therefore found personal jurisdiction lacking. *Id.*; *see also Kerry Steel*, 106 F.3d at 151 (finding no purposeful availment where the plaintiff initiated contact with the defendant and defendant had no employees or offices in the forum state and never sent any employees into the forum state); *Hillerich & Bradsby Co. v. Hall*, 147 F. Supp. 2d 672, 676–77 (W.D. Ky. 2001) (finding no purposeful availment where the plaintiff initiated contact with the defendant; the contract was neither negotiated nor signed in Kentucky; and the defendant never visited Kentucky). And in

other contract cases, this Court has emphasized that a "garden variety single-contract case," without more, will generally not justify jurisdiction. *Envirometric*, 2012 WL 4023789, at *4.

Here, Paratus urges the Court to find that this is a garden-variety single contract case and is similar to *Spectrum Scan* in that Foam Master initiated contact with Paratus and the contract was negotiated and performed largely outside of Kentucky. [R. 7, pp. 9–10]. The Court agrees that some facts weigh against a finding of jurisdiction. For example, there is no allegation that Paratus's representatives were physically present in Kentucky to negotiate the contract, and the spray foam rig and trailer were ultimately delivered to Foam Master in Ohio, not Kentucky. *See, e.g.*, [R. 8-1, ¶ 9]. However, based on the pleadings and affidavits in this case, when viewed in the light most favorable to Foam Master, it appears that Paratus's contacts with the forum state are not quite as limited as the defendant suggests.

Looking at the defendant's activities, as the Court must, the Court notes Paratus's active solicitation of business from Foam Master. In this respect, this case is more like *Tri-State Equipment Rentals, LLC v. Chevalier*, No. 05-210-DLB, 2007 WL 2571672 (E.D. Ky. Aug. 31, 2007) than *Spectrum Scan*. In *Tri-State Equipment Rentals*, a Wisconsin individual purposefully availed himself of the benefits of transacting business in Kentucky when he solicited business from the plaintiff, which he knew to be a Kentucky corporation, by sending several email solicitations and making phone calls. *Id.* at *4. The plaintiff responded to one of the email solicitations and contracted to purchase goods from the defendant, ultimately wiring money to the defendant from its Kentucky bank. *Id.* at *1–2. The defendant was never physically present in Kentucky. *Id.* at *2. Nevertheless, the district court found personal jurisdiction existed. It explained that "reaching into another state to conduct business with its residents is a significant factor in establishing purposeful availment." *Id.* at *4 (citing *Kerry Steel*, 106 F.3d at 151). The

court also noted that "a substantial contract [there, $900,000] can be the basis for a showing of purposeful availment." *Id.* (citation omitted). And in that case, the "Wisconsin resident's solicitation of business from a Kentucky company show[ed] an intention to reach out, beyond the borders of Wisconsin, in an attempt to take advantage of business opportunities in Kentucky." *Id.*; *see also Outdoor Venture*, 2013 WL 2147854, at *6 (discussing *Tri-State Equipment* and finding purposeful availment where the defendant initiated a business relationship with the plaintiff by sending an agent to Kentucky to solicit the plaintiff's business and sending samples to the plaintiff, among other things).

The same is true here. Paratus actively solicited Foam Master's business over the course of several years via Facebook and email, with full knowledge that Foam Master was a Kentucky-based business that operated exclusively in Kentucky. *See* [R. 8-1, ¶¶ 4–12]. Foam Master eventually responded to that solicitation and purchased the trailer and spray foam equipment as a result, for a significant price of approximately $78,641.50. *Id.* ¶¶ 9–12; *see also* [R. 1-1, p. 5]; [R. 7-1, pp. 14–16 (Exhibit 1C, Invoice), 17–19 (Exhibit 1D, Invoice)].[9]

These facts distinguish this case from the garden variety single-contract case where the plaintiff initiates contact with the defendant, like *Spectrum Scan*. Here, Paratus insists that it was Foam Master—not Paratus—that requested a quote from Paratus for the sale of the trailer and equipment. *See, e.g.*, [R. 14, pp. 12–13]. And it may very well be true that Foam Master specifically requested the quote on these goods, which ultimately culminated in the purchase of those goods from Paratus. *See* [R. 7-1, ¶ 5 (explaining that Paratus emailed a quote to West "in

---

[9] As already explained, Plaintiff alleges that he purchased the trailer and spray foam rig equipment for. [R. 1-1, p. 5]. The invoices supplied by Paratus are for $15,000 and $62,513.00, which add up to $77,513.00. [R. 7-1, pp. 14–16 (Exhibit 1C, Invoice), 17–19 (Exhibit 1D, Invoice)]. Nevertheless, Paratus does not dispute the amount stated by Plaintiff, and for purposes of this Court's analysis, it is enough to note that either amount is significant.

response to an inquiry from Foam Master, LLC")]. However, based on West's affidavit, Paratus, through its sales representative, actively solicited Foam Master's business for years and developed an ongoing relationship with Foam Master's owner for the purpose of selling its spray foam equipment. *See* [R. 8-1, ¶¶ 4–12]. Paratus does not contest its sales representative solicited Foam Master's business directly through Facebook and emails over a period of years, and it acknowledges that it has a Facebook page. [R. 7-1, ¶ 4]. Stated simply, this is not a case of a mere "passive website," as Paratus suggests. *Id.* And Paratus's efforts ultimately paid off when Foam Master responded to Paratus's multiple solicitations, just like the plaintiff in *Tri-State Equipment Rentals*. *See Air Prod. & Controls*, 503 F.3d at 551 ("In this case, the parties did not engage in a one-time transaction, but in a continuing business relationship that lasted a period of many years. Defendants reached out beyond Kansas' borders to conduct business with a company whose principal place of business it knew to be in Michigan. Such contacts are not 'random,' 'fortuitous,' or 'attenuated,' but are the result of deliberate conduct that amounts to purposeful availment.").

The Court therefore finds that, on balance, these facts weigh in favor of finding that Paratus purposefully availed itself of the forum state. Simply put, Paratus's contacts with Kentucky, as related to this case, are not the kind of "random," "fortuitous," or "attenuated" contacts that would counsel against jurisdiction. *See id.*; *Intera Corp. v. Henderson*, 528 F.3d at 616; *Burger King*, 471 U.S. at 476. Instead, it is clear from the pleadings and affidavits, when viewed in the light most favorable to Foam Master, that Paratus intended to reach out beyond the borders of Ohio in an attempt to take advantage of a significant business opportunity in Kentucky. *See Tri-State Equipment Rentals*, 2007 WL 2571672, at *4; *cf. Advanced Sols.*, 2017 WL 2114969, at *4 (finding no purposeful availment where the defendant company had not

"welcomed the business of Kentucky residents on a regular basis" and had instead sold only one item to the plaintiff, and the only other sale to a Kentucky resident had been made through a website that was not directed to Kentucky residents). This resulted in the representations, negotiations, and ultimately, the contract that form the basis for Plaintiff's claims.

Although the Court finds that the contract with Foam Master is sufficient to demonstrate Plaintiff's purposeful availment, Plaintiff's sales to other Kentucky businesses make this finding even stronger. While Paratus's president, Shockey, advises that Partus's online presence "does not specifically target Kentucky customers," the record demonstrates that the company has made several sales to other Kentucky-based businesses. As West confirmed in his affidavit, Paratus also sold its spray foam equipment to other Kentucky-based companies, including West's prior employer, Synergy Home HVAC, [R. 8-1, ¶ 7], and Thoroughbred Insulation, *id.* ¶ 8, and per Paratus's Facebook posts and reviews, it also sold to a number of Kentucky-based businesses, including B-Level Concrete Lifting. *Id.* ¶ 19. Paratus does not deny that these sales occurred. Such sales bolster the Court's finding that Paratus purposefully availed itself of the forum state, Kentucky. *See Olbers*, 2017 WL 3671328, at *6 (noting that "[t]he defendants have made eighty-two sales to Kentucky residents over nearly fourteen years," and such sales "indicate that the defendants welcomed the business of Kentucky residents on a fairly regular basis"); *Neogen Corp.*, 282 F.3d at 891–92 (emphasizing the fourteen contracts that the defendant had made with customers from the forum state). In other words, the sale to Foam Master "is not an isolated transaction that is unlikely to be repeated; rather, the defendants have an ongoing relationship with customers in the Commonwealth." *Olbers*, 2017 WL 3671328.

For all of these reasons, the Court finds that Paratus has purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the forum state. The first prong of the due process analysis is therefore satisfied.

### b. Prong 2 – "Arising From" Requirement

The Court turns to the second prong of the purposeful availment test—i.e., the cause of action arises from the defendant's activities in the forum state.  This second prong has been described as a "more 'lenient' standard." *Gregory*, 2024 WL 2279165, at *6 (quoting *Hall*, 359 F. Supp. 3d at 512). It requires that the cause of action have a "substantial connection with the defendant's in-state activities." *Id.* (quoting *Hall*, 359 F. Supp. 3d at 512). Stated another way, "the plaintiff's cause of action must be proximately caused by the defendant's contacts with the forum state." *Id.* (quoting *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 507–08 (6th Cir. 2014)) (internal quotation marks omitted). And, as already discussed, Kentucky's Long Arm Statute already requires a finding that the plaintiff's claims arise from the defendant's contacts with the form state, and the Court has already made that finding. *See Childress Cattle*, 2017 WL 3446182, at *6 (finding second prong of the due process analysis met where the Court had already found the Kentucky statute's "arising from" requirement to be satisfied). For those same reasons, the Court finds that Foam Master's causes of action arise from the defendant's activities in Kentucky, or in other words, Foam Master's causes of action were proximately caused by Paratus's contacts with Kentucky. *See Gregory*, 2024 WL 2279165, at *6; *see also Outdoor Venture*, 2013 WL 2147854, at *9 (explaining that the "arising from" standard is lenient and "does not require the cause of action to 'formally' arise from the defendant's contacts" (citation omitted); *Tri-State Equipment*, 2007 WL 2571672, at *4 ("Here, the fact that [the

defendant] entered into a contract with a Kentucky corporation and the instant action is based upon a breach thereof is sufficient to satisfy the ['arising from' prong].").

### c. Prong 3 – Reasonableness

The final prong asks "whether the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Gregory*, 2024 WL 2279165, at *6 (citing *Air Prods.*, 503 F.3d at 550). In considering whether the exercise of jurisdiction is reasonable, the Court considers "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.* (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)) (internal quotation marks omitted). And, as already explained, where the first two requirements of the purposeful availment test are satisfied, "an inference of reasonableness arises." *Theunissen*, 935 F.2d at 1461 (citation omitted).

As to the above-listed factors, Paratus argues that its burden is significant, as "[a]ll operations, employees, records, and witnesses are in Ohio," and it has no Kentucky presence. [R. 7, p. 11]; *see also* [R. 14, p. 12]. Paratus also argues that "Kentucky's interest is minimal," while Ohio has a "substantial interest in regulating commercial transaction conducted entirely within its borders." [R. 7, p. 12]; *see also* [R. 14, p. 12].[10]  Foam Master, on the other hand, argues that this third prong is satisfied because Paratus "has caused damage in Kentucky by injuring the Plaintiff's business reputation and profits." [R. 8, p. 13]. From this, the Court understands Foam Master's argument to be that Kentucky has a significant interest in protecting its residents from such damage (or providing them with a convenient forum for redressing such

---

[10] Paratus again relies in large part on its assertion that Foam Master initiated the contact between the parties. *See* [R. 14, pp. 12–13]. As already explained, however, it was Paratus that actively solicited Foam Master's business.

injuries). *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 368 (2021) (explaining that certain states had an interest in providing their residents with a convenient form for redressing injuries caused by out-of-state actors (citing *Burger King*, 471 U.S. at 473)).

The Court agrees that Kentucky has a "significant interest[]" in "providing [its] residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Id.* (quoting *Burger King*, 471 U.S. at 473); *see also Bird*, 289 F.3d at 876 ("Ohio has a legitimate interest in protecting the business interests of its citizens, even though all of [the plaintiff's] claims involve federal law."); *Air Prod. & Controls*, 503 F.3d at 555 (finding that the forum state "clearly has an interest in protecting a company whose principal place of business is located in [the forum state]"). And while the Court does not disagree that litigating this case in Kentucky will place a burden on Paratus, other than traveling to its neighbor state, Kentucky, "the burden on the defendant is no more than any defendant would bear during litigation." *Olbers*, 2017 WL 3671328, at *7. Further, Foam Master would be equally burdened by litigating this case in Ohio. *See AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, *7 (6th Cir. 2024) (acknowledging that the out-of-state defendants would suffer a significant burden by litigating the case in Tennessee, but noting that it would be significantly burdensome for the plaintiff to litigate the case in Arizona, where defendants were based). "On balance, and considering [Foam Master's] light prima facie burden, [Paratus's] arguments do not overcome the inference of reasonableness arising from [Foam Master's] satisfaction of the first two" prongs of due process analysis. *Id.*; *see also Olbers*, 2017 WL 3671328, at *7 (finding the reasonableness prong met where the defendant suffered no more burden than any other defendant in litigation, beyond traveling to Kentucky; the state had an interest in resolving the case; and it would be more

- 29 -

efficient to try the case in Kentucky, where the injury occurred, and the claims arose under Kentucky law.

In sum, the Court finds that all three prongs of the due process analysis have been satisfied. Because both the federal Due Process Clause and the Kentucky Long Arm Statute have been satisfied, the Court will deny the Motion to Dismiss, [R. 7].

**B. Foam Master's Motion to Transfer, [R. 9]**

In its Motion to Transfer and related briefing, Foam Master makes clear that it seeks transfer only as an alternative to dismissal. [R. 8, p. 1, 13–16]; [R. 9, p. 1]; [R. 15, p. 2]. Because the Court finds that personal jurisdiction exists, it need not consider whether transfer is appropriate.

## IV. CONCLUSION

For the reasons set forth above, and considering the pleadings and affidavits in the light most favorable to the plaintiff, *see Serras*, 875 F.2d at 1214, the Court finds that Foam Master has satisfied its burden of demonstrating a prima facie case of personal jurisdiction, both under Kentucky's Long Arm Statute and the federal Due Process Clause. The Court will therefore deny Paratus's Motion to Dismiss, [R. 7], and will deny as moot Foam Master's Motion to Transfer, [R. 9].

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Defendant Paratus's Motion to Dismiss, [**R. 7**], is **DENIED**.

2. Plaintiff Foam Master's Motion to Transfer, [**R. 9**], is **DENIED as moot.**

This the 30th day of September, 2025.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY